**Mrs. Don Mahoney, Appellee, v. Alton Light and Power Company, Appellant.**

Opinion filed June 4, 1934.

WILLIAMSON, BURROUGHS & SIMPSON and JAMES L. REED, for appellant.

V. M. JACOBY, for appellee.

MR. PRESIDING JUSTICE EDWARDS delivered the opinion of the court.

Appellee brought suit against appellant, a public utilities corporation, to recover damages, as she claims, for an unwarranted discontinuance of electric service, at her residence, averring that on February 5, 1930, she applied to appellant for service, and made the required deposit of $3 therefor; that the service was

installed, and continued until August 1, 1932, when, although she had paid all proper charges, the service was arbitrarily discontinued without cause or reason.

Appellant filed the general issue, and a number of special pleas, justifying its action, the one principally relied upon being that appellee, by means of a device, called "a jumper," wrongfully diverted the electric current, so that same did not pass through the meter, and wrongfully used and consumed such electricity, without knowledge of appellant, by reason whereof, appellant was not legally bound to furnish other or further electric service, to which special pleas, appellee filed replications severally, denying the allegations of such pleas.

It is thus patent that it is conceded by the pleadings, in the cause, that if appellee did, without knowledge or acquiescence of appellant, deflect the electric current, so that it was consumed by her, without passing through the meter for the purpose of measurement, that appellant was justified in discontinuing the service. If it were not so, appellee should have demurred to the pleas, thus raising the question as to whether the matters, so pleaded, constituted a defense to the action.

There was a trial before the court and a jury, a verdict in appellee's favor for $999, upon which judgment was entered, after a motion for a new trial had been overruled, and from which judgment this appeal has been taken.

It appears from the testimony that on February 5, 1930, appellee applied to appellant for electric service, at her residence, deposited $3 as required by its rules, same to be returned with interest, and less any unpaid service charges upon termination of the relation. All necessary equipment was installed by appellant, service began with promptness, and appellee, on her part, paid monthly charges, as rendered by appellant.

Henry Gavin, a meter reader for the company, testified that on January 20, 1932, while in the kitchen of the appellee, for the purpose of reading the meter, he saw an insulated, horseshoe shaped, short piece of wire, commonly called a jumper, the purpose of which, when inserted, would divert electric current from being registered through the meter; that this wire was hanging on a nail close to the meter. The matter being reported to the officials of the company, it resulted in the installation, on February 4, 1932, on a pole, about 50 feet from the house, of a check meter, through which the current must pass before going through the house meter, and on both of which the readings should be identical.

The meters were read monthly from February to July, 1932, with the result that a marked discrepancy was disclosed in the registration of the consumption of the two meters, the showing being that during such period of time, the check meter registered 890 kilowatt hours, while the house meter indicated 45 kilowatt hours, an excess of 845 kilowatt hours, registered by the check meter, and not shown on the house meter.

When this condition became apparent, appellant decided to install in the residence of appellee, a replacement meter, equipped with an "anti jumper device," for the purpose of preventing the diversion of electric current.

On August 1, 1932, Albert Waters, an employee of appellant, repaired to the Mahoney house, to install such replacement meter. According to his testimony, when he approached the kitchen door, the husband of appellee, recognizing him as such employee, noticing the meter and kit of tools, entered the kitchen followed by Waters; that in the view of the latter, the husband walked directly to the meter and removed from it a jumper wire, which was at the time in actual use; without comment took the wire and went into another

room, from which he did not return. Waters installed the replacement meter, then reported the matter of the jumper wire to the company's officers, and as a consequence, on August 3, 1932, appellant caused its service to appellee to be discontinued.

A few days later, the husband of appellee, acting, as the proof shows, as the agent of his wife, interviewed the local manager, as to why the service was suspended. He was told the reason, whereupon he stated he desired the electric service to be re-established. He was informed that same could be done upon payment of $29.11, the amount due for the current consumed, and not paid for, and upon further condition that the house meter should be installed in a metal box, and service wire inside the house be concealed in a conduit, so that the current could not be further diverted, for which a deposit of $30 was to be made to cover cost of material and labor, any surplus to be refunded to Mr. Mahoney, or excess absorbed by the company. The husband acceded to these terms, but returned in a few days, and stated he would not make the deposit of $30, as he did not own the dwelling and did not wish to make improvements on the property of another.

On February 25, 1933, appellant mailed to appellee a check for $3.45, being the $3 deposit, plus interest thereon. It appears that this check was presented for signature to the proper officer by a clerk, who had prepared a number of checks; that the manager signed same, without knowing its contents, and relying upon the accuracy of the clerk; that when it was discovered to have been inadvertently issued, payment thereon was stopped.

The proof for appellee consisted mainly of her denial that there had ever been any diversion of the current, or tampering with the meter, or that there had at any time been any "jumper wire" in the kitchen. She further testified that the meter was a foot or more

above the kitchen door, and that her husband, whom the proof shows to be about five feet tall, could not have reached it, while standing on the floor, and that Waters, while installing the replacement meter, was obliged to stand upon a chair. In the matter of the altitude of the meter and her husband's inability to reach same, while standing on the floor, she is corroborated by the testimony of a neighbor, John Monahan.

Appellant's chief contention is that the verdict is against the manifest weight of the evidence, and that the court erred in not setting it aside.

The undisputed testimony that there was a difference in the readings of the check meter and the house meter of a total of 845 kilowatt hours, when the registration should have been the same in each, and both of which were in good repair and working order, conduces to the belief that there was a deflection or diversion of the current, and strongly tends to corroborate the testimony of Gavin that he saw a jumper wire hanging on the wall, in close proximity to the meter, as well as to substantiate the evidence of Waters that he saw such wire in use and operation, as against which is only the testimony of appellee and that of John Monahan, who only corroborates her upon some lesser matters, and not upon the main question, whether there was or was not a jumper wire attached to the meter in the kitchen.

We think the finding of the jury is contrary to the manifest weight of the evidence, and where such is true, the trial court should not hesitate to take the responsibility of setting aside the verdict. (*Belden v. Innis,* 84 Ill. 78.)

It was error to overrule the motion for a new trial, in consequence of which the judgment is reversed and the cause is remanded.

*Reversed and remanded.*